**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

West Licensing Corporation, West Publishing Corporation d/b/a West Group,

Plaintiffs,

v.

Keylaw.com, a division of Infospi.com,

Defendant.

Civil No. 00-761 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Patricia A. Bloodgood, Esq., Eric C. Tostrud, Esq., and Christine Boylan, Esq., Lockridge Grindal Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota, 55401, for Plaintiffs.

Larry D. Espel, Esq., and Jeanette M. Bazis, Esq., Greene Espel, 333 South Seventh Street, Suite 1700, Minneapolis, Minnesota, 55402, and Timothy Dillon, Esq., Weintraub Dillon, 12520 High Bluff Drive, Suite 260, San Diego, California, 92130-2062, for Defendant.

---

This matter is before the Court on the motion of Plaintiffs West Licensing Corporation and West Publishing Corporation (collectively, "West") for a temporary restraining order ("TRO"). West seeks to restrain Defendant Keylaw.com from using the internet domain name "Keylaw.com" and from using the key design displayed on that website.[1]

West's Complaint in this matter alleges trademark dilution, trademark infringement, violation of the new Anticybersquatting Consumer Protection Act, and other claims. According to West, Defendant's use of the domain name "Keylaw.com" and its use of the key design violates West's rights in its family of "key" marks, including "KeyCite," the key number system for legal research, and the newly trademarked phrase, "The key to good law."

---

1 Defendant has removed the key design from its website.

FILED APR 11 2000
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD ______
DEPUTY CLERK VEM

7

Defendant launched its website in January of this year. The website bills itself as a "network of professionals with backgrounds in law." According to counsel, the primary focus of Keylaw.com is a virtual mediation service. However, the website also allows the user to locate and contact attorneys, to access court forms and other public records, and central to the case at hand, to access free legal research. As part of the promotion for the website, defendant sent electronic mail to approximately 10,000 attorneys, seeking to solicit these attorneys to become "Featured Members" of Keylaw.com. The subject line of the e-mail stated: "Read your bio on WESTLAW." West presented evidence that some attorneys interpreted this subject line to mean that the website described in the e-mail had some connection to West. Defendant alleges that, upon learning of the confusion, it immediately changed the subject line, and that no further confusion has been evident.

The gravamen of West's claims is that "Keylaw.com" is an impermissible amalgamation of two of West's most distinctive marks: KeyCite®, and WESTLAW®. Moreover, West contends that "Keylaw.com" intends to benefit from the strength and distinctiveness of West's entire family of "key" marks.

## Discussion

### A. Personal Jurisdiction

As an initial matter, Defendant contends that the entry of a restraining order is improper because this Court does not have personal jurisdiction over Defendant. Defendant requests permission to submit a motion to dismiss for lack of personal jurisdiction and improper venue. Defendant's memorandum in opposition to the request for a restraining order does not analyze the jurisdiction issue. At the hearing, West contended that this Court has personal jurisdiction over Defendant.

A review of relevant case law establishes the likelihood that this Court has personal jurisdiction over Defendant. By Defendant's own admission, its e-mails sought to solicit attorneys within the "top 150" area codes in the United States, in which the area codes for the Twin Cities are undoubtedly included. This solicitation of Minnesota residents is likely enough, standing alone, to confer jurisdiction on this Court. See, e.g., State ex rel. Miller v. Baxter Chrysler Plymouth, Inc., 456 N.W.2d 371, 377 (Iowa 1990) (direct mail solicitation into state sufficient to justify jurisdiction); see also State v. Granite Gate Resorts, Inc., 568 N.W.2d 715, 719 (Minn. Ct. App. 1997), aff'd, 576 N.W.2d 747 (Minn. 1998) ("Minnesota courts have concluded that defendants who know their message will be broadcast in this state are subject to suit here."). Moreover, Minnesota's long-arm statute, Minn. Stat. § 543.19, provides for jurisdiction over a foreign corporation that causes injury or damage in Minnesota. See Minn. Stat. § 543.19, subd. 1(d). Here, a corporation headquartered in Minnesota alleges that it has been injured by Defendant's activities. The totality of Defendant's contacts with Minnesota make it unlikely that the exercise of jurisdiction violates "traditional notions of fair play and substantial justice." Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528-29 (8th Cir. 1991).

The Court recognizes, however, that Defendant has not submitted its arguments in opposition to the Court's exercise of jurisdiction, nor have the parties engaged in any jurisdictional discovery. Therefore, the Court makes a provisional finding that it has personal jurisdiction over Defendant for the purposes of this restraining order, pending a more detailed analysis of the issue at the preliminary injunction stage of the litigation.

**B. Temporary Restraining Order**

A temporary restraining order may issue only on an examination of the following factors:

(1) the threat of irreparable harm to the movant;

(2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

**1. Likelihood of Success on the Merits**

To prevail on its trademark dilution claim, West must prove that:

1. the marks at issue were famous before Defendant began use of the domain name at issue; and

2. Defendant's use causes dilution of the distinctiveness of the marks.

See 15 U.S.C. § 1125(c). Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services." Id. § 1127.

To succeed on its federal trademark infringement claim, West must prove (1) ownership of a valid trademark; and (2) a likelihood of confusion between the registered mark and the alleged infringing use by the defendant. Aveda Corp. v. Evita Mktg., Inc., 706 F. Supp. 1419, 1426 (D. Minn. 1989) (citing A.J. Canfield Co. v. Vess Beverages, Inc., 796 F.2d 903, 906 (7th Cir. 1986)).

Even at this preliminary stage of the litigation, it appears that West is likely to prevail on its claims of trademark dilution and trademark infringement against Defendant. West's marks, including "KeyCite"®, the key logo and "WESTLAW"®, are undoubtedly famous. Furthermore, these marks were famous long before Defendant's use began. The Court also finds that Defendant's use of the domain name "Keylaw.com" and its use of the key logo are likely to dilute the distinctive quality of the famous marks.

West also is likely to prevail on its claim of trademark infringement. West owns a valid mark in both "KeyCite"® and "WESTLAW"®. These marks are strong. Defendant has registered and is using a domain name that is confusingly similar to the marks. West has alleged, and it is likely that West can prove, that by using this domain name, Defendant intended to cause consumer confusion and thereby profit from that confusion. The evidence supports a holding that West is likely to prevail on its infringement claim.

**2. Irreparable Injury**

The Court should presume irreparable harm on a showing of trademark infringement or dilution. See General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) (irreparable injury in infringement cases due to inability to undo consumer confusion); S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3rd Cir. 1992) (trademark infringement "amounts to irreparable injury as a matter of law"); Jews for Jesus v. Brodsky, 993 F. Supp. 282, 311 (D. N.J. 1998) ("lost control of [one's] reputation and goodwill" constitutes irreparable injury). West has shown a likelihood of success on its claims. Thus, West has met its burden to show that it will suffer irreparable harm absent the issuance of the restraining order.

**3. Balance of Harms**

Defendant contends that the harm it will suffer if a TRO issues is greater than the harm West will suffer if Defendant is allowed to continue to use the domain name "Keylaw.com." Defendant's argument is the classic David versus Goliath argument: Keylaw.com is a small start-up corporation that is just beginning to establish its name in mediation circles, while West is a giant multinational corporation that can easily absorb the allegedly de mininis confusion generated by Keylaw.com. Defendant's argument misses the point: in the context of trademark infringement and dilution, the relevant harm is the harm to the mark. West has demonstrated that

it is likely that its marks are being infringed and diluted by Defendant's use of "Keylaw.com." The irreparable harm presumed by Defendant's infringement is not outweighed by the harm Defendant alleges.

However, the Court is not altogether insensitive to the realities of the internet world. Therefore, the Court will allow Defendant to use the "Keylaw.com" domain name, with some restrictions, for a period of 6 months. Defendant must immediately post a conspicuous disclaimer on the site that "Keylaw.com" is in no way affiliated with West, KeyCite®, or WESTLAW®. Within 30 days from the date of this Order, Defendant must have in place a new domain name for its services. After the 30 days have elapsed, the only information that may appear on the Keylaw.com website is the disclaimer described above, and a hyperlink to Defendant's new website. At the expiration of six months from the date of this Order, unless the Court has ruled to the contrary in its consideration of West's request for a preliminary injunction, Defendant must transfer to West the domain name "Keylaw.com." This six-month grace period should allow Defendant sufficient time to transition its customers to a new domain name and to develop good will for that new name.

**4. Public Interest**

The public interest lies in protecting validly registered trademarks. Because West has shown a likelihood that Defendant is infringing on its valid marks, the public interest supports a restraining order.

**5. Security**

Defendant has alleged that, if a restraining order issues, it will be necessary for Defendant to spend close to $250,000 to put Defendant in the position it holds now with respect to the good will and name recognition generated by Keylaw.com. West does not suggest an appropriate

bond amount. The Court finds that, to secure this restraining order, West shall post bond in the amount of $100,000.

**ORDER**

Based on all the files, record, and proceedings herein, **IT IS HEREBY ORDERED that**:

1. Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 2) is **GRANTED**.

2. Defendant is hereby **ENJOINED** from using the domain name "Keylaw.com" after six months from the date of this Order. Defendant must immediately post a disclaimer on its website to the effect that the website is in no way affiliated with West, WESTLAW®, KeyCite®, or any other West trademark or entity. Within 30 days from the date of this Order, the website "Keylaw.com" must consist only of the above-described disclaimer and a hyperlink to Defendant's new website. At the end of six months from the date of this Order, Defendant shall transfer the domain name "Keylaw.com" to West.

2. Plaintiffs shall post a bond in the amount of $100,000 to secure this Restraining Order. In lieu of a bond, plaintiffs may post cash or its equivalent with the Clerk of Court.

3. This Order shall remain in effect until the Court rules on Plaintiffs' Motion for a Preliminary Injunction.

Dated: April 11, 2000

DONOVAN W. FRANK
Judge of United States District Court